[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 1. Statement of Facts
This is an appeal from a decision of the West Hartford Town Plan and Zoning Commission acting in its function as the inland CT Page 5603 wetlands and watercourses agency for the Town (hereinafter "Commission"). The Commissions decision granted approval to an amendment to the official inland wetlands and watercourse map in response to an application from the defendant, Aspen Development. The affected property is known as 179 Westmont Road in West Hartford. The plaintiffs are the owners of property known as 11 Dodge Drive in West Hartford.
 2. Aggrievement
At the hearing on this matter, testimony was introduced sufficient for the court to find that the subject property and the plaintiffs' property abut each other. Further there was testimony introduced that the plaintiffs' property could be adversely affected by the decision in question.
While the Town Plan and Zoning Commission is appropriately named as a defendant in this action, the action is not a planning or zoning appeal pursuant to § 8-8 of the General Statutes, but rather is an appeal from a wetlands commission taken pursuant to § 4-183 of the General Statutes. Section 4-183
requires that the appellant be aggrieved. However, the underlying authority for this appeal is found in § 22a-43 which appears to contemplate statutory aggrievement when it provides:
 "Any person owning or occupying land which abuts any portion of land or is within a radius of 90 feet of the wetlands or watercourses involved in any regulation . . . [may] appeal to the Superior Court. . . ."
The court finds that the appellants property abuts the property in question and accordingly, that they are aggrieved within the meaning of § 22a-43 of the General Statutes.
 Standard of Review
Standard of review to be applied by the court in this case is set forth in § 4-183(j) which provides, in pertinent part:
"The court shall not substitute its judgment for that of the agency as to the weight of the evidence or question of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in CT Page 5604 violation of constitution or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other area of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious as characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 Discussion
The Commission conducted a number of hearings relating to the inland wetlands map of the Town in so far as it related to the Aspen property. Its purpose was to map the wetlands.
The Commission heard from a plaintiffs' expert, George T. Logan, who had concluded that there was a regulated wetland on the Aspen property from a visual inspection of the vegetation on May 30, 1998, visit to the property, and identification of at least 9 dominant types of vegetation that are concordant with a swamp. Mr. Logan made only visual inspection of the Aspen property for fear of trespassing upon private property.
The same property was examined on the site and characterized by David H. Lord, the defendant Aspen's expert, as an intermittent watercourse.
Initially there appeared to be a factual dispute concerning whether the watercourse in question was intermittent or flowing.
Section 22a-38 of the General Statutes contains definitions for uses in § 22a-36 through 22a-45a inclusive. That section defines "watercourses".
 "(16) Watercourses — means rivers, streams, brooks, waterways, lakes, ponds, marsh, swamp, bogs and all other bodies of water, natural or artificial, vernal or intermittent, public or private which are contained within flow through or border upon this state or any portion thereof. . . ."
In view of this definition, it appears to the court that from a regulatory point of view there is no difference between intermittent flow and continuous flow. Either appears to be a watercourse within the meaning of 22a-38(16). CT Page 5605
In paragraph 8 of the plaintiffs' complaint, they allege 10 reasons why the agency acted arbitrarily, illegally and in abuse of its discretion.
The first claim is that the application was materially changed during the hearing process thereby creating a fundamentally unfair hearing process. Section 22a-42a(b) requires that "a public hearing in relation thereto is held by the inland wetland agency, at which parties and interested citizens shall have the opportunity to be heard . . ." The court is satisfied that the record justifies the agencies actions in this regard.
Next, the plaintiffs' claim that the proposed amendment to the official wetlands and watercourses map was submitted by the applicant at the final hearing on August 3, 1998, thereby creating a fundamentally unfair hearing process in violation of Connecticut General Statute 22a-42a(b). The record contains no amended application or map submitted on the date in question. While the plaintiffs' attorney in effect testified to the second map at the time of the court's hearing on this matter, no such map is revealed by the return of record. This is a record appeal pursuant to the procedures set forth in § 4-183. The court notes that pursuant to 4-183(h), if before the date of the hearing on the merits on the appeal, application is made to the court for leave to present additional evidence, and it is shown to the court that the additional evidence is material and that there was good reasons for failure to present it in proceedings before the agency, the court may order that additional evidence be taken . . ." There is no indication that any application to present additional evidence was made before the date of the hearing. Accordingly, evidence was received on aggrievement only.
The plaintiffs next claim that the proposed amendment to the official wetlands map was accepted by the defendant agency without the approved amendments being reflected on the map. The record appears to substantiate the Town's claim that there was a sketch of the affected area prepared by the applicant's engineer. The plaintiffs' complaint appears to claim that the engineer's sketch was not overlaid onto the wetland map itself prior to the decision. The plaintiff cites no authority, and the court can find none, for the proposition that such a failure would invalidate the agency action. CT Page 5606
The plaintiffs next claim that the hearing process was conducted in a fundamentally unfair manner. It is difficult to tell from the plaintiffs' brief precisely what this claim encompasses. However, at oral argument, the plaintiff appeared to be contesting the chairman's refusal to allow them to continue. The transcript of the hearing contains the following exchange:
 "Mr. McNamara: Mr. Wirth, a couple of people who have already spoken want the opportunity to respond to what I guess one could argue is rebuttal by the previous witness.
 Chairman Wirth: Well, I think our tradition has been to pretty much cut that off because we don't want to be here all night going back and forth, which that obviously can do. I think if you want to address some of those points tangentially in your second hearing here, I think you could do that.
 Mr. McNamara: May I raise a — I know the last time I wanted to raise something like this you wouldn't allow me to do it.
 Miss Homelson: Mr. Chairman, there may have been some people who didn't have the opportunity to be heard.
 Chairman Wirth: Well, what more did we have to do to give them the opportunity to be heard other than to say to come forward and speak?
[The following comments by Mr. Foster]
 Chairman Wirth, well again, I thought we had opened it up for anyone to speak against it. If there is still people who haven't had the chance to speak against it, then why don't we allow for one last volley, but,"
Following the above quoted exchange, Mr. McNamara was given an opportunity to speak. Mr. Foster was given an opportunity to speak. Mr. McNamara was given another opportunity to speak. At that point Chairman Wirth concluded this hearing. The court sees no basis for the plaintiffs' claim that the hearing was fundamentally unfair.
The plaintiffs next claim that the proposed amendment did CT Page 5607 not appropriately define the boundary of the watercourses as required by Connecticut General Statutes § 22a-38(16) however, the transcript indicates that the applicants soil scientist, while indicating an intermittent flow, was the only expert who had been on the property. At the public hearing, Mr. Lord stated.
 "Mr. Logan is calling this area a wetland. I am calling it a watercourse. To the Commission, it is a regulated area, the size of which is identical in what I presented to the Commission and what Mr. Logan refers to in his report." DR 17, p. 25.
While Mr. Logan and Mr. Lord may have disagreed on whether the area in question was a wetland or watercourse, there was no real disagreement as to the boundaries of the area in question.
The plaintiff next claims that the decision was erroneous because portions of the regulated area should have been delineated as a watercourse under the definition set in § 22a-38(16). It appears to the court that whether this was continuously flowing or intermittent, accepting either expert's opinion, this would be a watercourse.
The plaintiffs next claim that the defendant agencies opinion is not supported by the record or by substantial evidence. The court finds nothing in the agencies opinion which fails to be substantiated by substantial evidence with the possible exception of the classification as "intermittent". As the court has previously ruled in this opinion, the court finds no significance to which classification is chosen.
The plaintiffs next claim that the defendant agency in approving the application exceeded its authority and that it failed to follow its regulations and the general statute. The plaintiffs fail to give any indication of the manner in which the agency failed to follow regulations and general statutes. The court can identify no such failure.
The plaintiffs next claim that the agency approved the application without giving the public an opportunity to examine the evidence upon which the approval was based and to cross examine and to offer evidence in rebuttal. Although it is not clear in the plaintiffs' brief, argument at the court hearing on the matter leads the court to believe that this claim surrounds CT Page 5608 the plaintiffs' contention that a new map was introduced at the hearing on July 20. As the court has previously ruled, there is no evidence in the record that such a map was introduced. There is no evidence in the record that the Commission in anyway relied on a second map in arriving at its decision.
The plaintiffs final claim is that the defendant agency otherwise acted arbitrarily, illegally and in abuse of discretion in one or more respects that may appear after the record of the proceedings is prepared and returned to court. The court finds no defect which would fall within this claim.
For reasons more fully set forth above, this court finds that none of the acceptable reasons for reversal set forth in §4-183(j) have been shown by the plaintiff to exist in this case.
The decision of the agency is affirmed.
By,
Kevin E. Booth, J.